UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

Eastern District of Kentucky
**FILED**

**JUL 1 8 2005**

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 03-197

ALAN ERNEST                                                    PLAINTIFF

V.                          **OPINION & ORDER**

THE BOURBON COUNTY                                           DEFENDANTS
BOARD OF EDUCATION, et al.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on defendant The Bourbon County Board of Education's

(the "Board") motion for summary judgment [DE #32].  This matter was referred to United

States Magistrate Judge J. Gregory Wehrman to conduct a post-termination due process hearing

and to issue a report and recommendation pursuant to 28 U.S.C. §636(b).

The Magistrate Judge filed his proposed findings of fact and recommendation on March 7,

2005.  Based on the hearing conducted on February 7, 2005, the Magistrate Judge found that the

plaintiff Alan Ernest's conduct on September 12, 2001 during the course of the incident with

student K.W. did not violate KRS §161.011(7).   Accordingly, the Magistrate Judge concluded

that Ernest's conduct did not justify disciplinary action by the defendants and the defendants failed

to demonstrate, by a preponderance of the evidence, that plaintiff's early termination was justified.

On April, 22, 2005, the Board filed objections to the Magistrate Judge's proposed findings

of fact and recommendation.  The Board's objections involve the following five topics: (1) the

credibility of witnesses; (2) violation of the Behavior Intervention Plan; (3) plaintiff's defense that

he should not have been penalized because other employees were not penalized; (4) the burden of

proof; and (5) the Board has no legal authority to provide a post-termination hearing for a terminated employee. This Court must make a *de novo* determination of those portions of the Magistrate Judge's proposed findings of fact and recommendation to which objection is made. 28 U.S.C. § 636(b)(1)(C).

## I.    CREDIBILITY OF WITNESSES

District courts typically do not reject a magistrate judge's views on credibility and substitute their own appraisal. It is especially within the province of the fact finder, who is able to observe the demeanor of witnesses, to make determinations of credibility which form the basis of the district court's factual determinations. *See, e.g., McDonald v. Petree*, 409 F.3d 724 (6th Cir. 2005) (finding that witness credibility is solely within the province of the fact finder); *Greene v. Dalion.* 164 F 3d 671, 674 (D.C. Cir. 1999) ("[T]he task of determining the credibility of a witness is the exclusive domain of the finder of fact"). The Sixth Circuit has found that a court's discretion, however, is not unlimited. *See United States v. Haynes,* 301 F.3d 669, 679-80 (6th Cir.2002). "A trial court's decision to credit a witness' testimony may be held erroneous on review if ... the witness' story ... itself is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Id.* at 679-80 (quotations and brackets omitted).

### A.    Credibility Determination Regarding Expert Witnesses

The Board first complains that the Magistrate Judge erred in finding that the Board's expert witness, Greg Abati, was not credible, but that Ernest's expert, Michele Foley, was credible. The Magistrate Judge noted that Abati did not testify that a different course of action would have avoided the need for physical force during the situation involving K.W., but instead stated that different actions could have avoided the need for force and would have created a less

likelihood of violence. Moreover, the Magistrate Judge acknowledged that Abati was not familiar with the Department of Juvenile Justice (DJJ) training provided to Ernest, training that the Board required Ernest to complete. The Magistrate Judge found that Foley developed the training program for the DJJ and her evaluation of Ernest's actions were, thus, more credible.

Furthermore, the Board states that Abati's contention that Ernest used "excessive force" should have been credited. Foley, on the other hand, found that the procedure used by Ernest may have not completely complied with DJJ procedure, but was the best available to Ernest given the physical environment. Typically when parties present opposing experts, they will disagree as the conclusions to be drawn from the facts of the case. Thus, it is not surprising that Abati could conclude that Ernest's actions did not comply with SPM procedure while at the same time Foley could conclude that Ernest's actions were in substantial compliance with DJJ procedure.

After a review of the record and the transcript from the February 7, 2005 hearing, this Court finds that Foley's testimony was not so internally inconsistent or implausible on its face that a reasonable factfinder would not credit. The Magistrate Judge's decision to credit Foley's testimony was not erroneous.

### B.    Plaintiff's Credibility

The Board argues that Ernest's testimony was not credible because he had previously testified that he was employed by the Board from December of 1997, although public records reveal that he was employed by the Clark County Board of Education from December 1997 through June 1998 and started working for the Board in August of 1998. Furthermore, the Board highlights that Ernest had previously testified that Ernest had K.W. arrested on more than one occasion and that he had personally filed charges against K.W., which is not entirely consistent

3

with the hearing testimony.  Even if Ernest's testimony was inconsistent in these respects, these issues were not material to the Magistrate Judge's determination.  The Magistrate Judge's determination that Ernest did not violate KRS §161.011(7) is not affected by whether or not he was a "tenured" classified employee.  Moreover, whether or not Ernest had personally filed charges against K.W. does not affect his handling of the situation involving K.W. on September 12, 2001.  Thus, the Court will not disturb the Magistrate Judge's credibility determinations.

       **C.**    **Credibility Determinations as to the Action Taken by Superintendent Carter**

       The Board complains that the Magistrate Judge mistakenly found that Superintendent Woodrow Carter's incident report included "mistaken conclusions".  The Board asserts that the Magistrate Judge's conclusions were based on testimony by Ernest and others that lacked credibility.  According to the Board, the Magistrate Judge incorrectly credited Ernest's testimony about the volatility of the situation and discredited Abati's conclusions that the situation was not volatile.

       The Board notes, "How threatening can a boy sitting and eating lunch be?  Only when Ernest sought to verbally assault the boy for the nth time did it again escalate.  Sure KW's demeanor changed when he realized the he was going to take another beating from Ernest."  *See* Objections, p. 6.  The Board's characterization of the testimony is completely inconsistent and borders on intentionally dishonest.  It was uncontroverted that even if K.W. was sitting during the incident, he was not calmly eating his lunch.  He was shouting hostile and threatening language at the other student, J.M., and Ernest.  Moreover, there was no evidence that Ernest was verbally assaulting K.W. at that time or had done so previously.  Incredulously, the Board's final contention is that Ernest was about to inflict a "beating" on K.W. and had also done so in the

4

past. No where in the record or transcript of the hearing is there any evidence that Ernest has

ever beat or attempted to inflict injury on K.W. Such a claim by the Board is both dishonest and

careless. The Board attempts to characterize K.W.'s behavior as a student calmly eating his lunch

before Ernest interfered. This characterization is not supported by the evidence. The Magistrate

Judge credited Ernest and Continuous Learning Center employee Sandra Morgan's testimony that

a physical confrontation was imminent between K.W. and J.M. Ernest and Morgan's testimony

was not so internally inconsistent or implausible on its face that a reasonable factfinder would not

credit it. Therefore, the Magistrate Judge was not in error in finding, contrary to Carter's

incident report, that when Ernest physically restrained K.W. it was not a "seemingly de-escalating

situation".

## II.    VIOLATION OF THE BEHAVIOR INTERVENTION PLAN

The Board argues that the Magistrate Judge concluded that the Behavior Intervention Plan

(BIP) adopted for K.W. was inapplicable to the September 12, 2001 lunchroom incident because

it only applied in the classroom. The Board mischaracterizes the Magistrate Judge's report and

recommendation. The Magistrate Judge found that the BIP was designed for use by teaching staff

dealing with "disruptive classroom behaviors" in a classroom. Report & Recommendation, p. 8.

The Magistrate Judge also concluded that the BIP was not applicable to the type of violent

behavior displayed by K.W. on September 12, 2001. The Magistrate Judge found, "The only

specific reference to violent behavior under the Plan instructs the staff member to make one or

more telephone calls for help. The Plan is silent concerning whether it is- or it is not- permissible

for a staff member to take action to prevent imminent violent behavior by KW." Report &

Recommendation, p. 8-9. Any finding by the Magistrate Judge that the BIP was not violated was

5

not premised on the fact that the incident occurred in the lunchroom, but that the BIP did not specifically address action to prevent imminent violent behavior by K.W. The Court will not disturb the Magistrate Judge's findings regarding the BIP.

## III.   DEFENSE THAT PLAINTIFF SHOULD NOT HAVE BEEN PENALIZED BECAUSE OTHER EMPLOYEES WERE NOT PENALIZED

The Board asserts that the Magistrate Judge's report and recommendation was based on Ernest's defense that he should not have been penalized because other employees present at the incident should also did not attempt to clear the room and were not penalized. Again, the report and recommendation does not make such a conclusion. The Magistrate Judge concluded that it was possible for Ernest to either clear the room or ask other staff members present to clear the room or to use a different SPM technique. But, the Magistrate Judge concluded that even though other choices could have been made by Ernest, there was no evidence that Ernest's actions violated KRS §161.011(7). The Magistrate Judge also found that Ernest was "fully engaged in preventing KW from taking violent action against plaintiff and/or JM during the course of the two and a half minute period in question, and could not reasonably have been expected to do more." Report & Recommendation, p. 18. The Magistrate Judge's report and recommendation did not rely on the conclusion that Ernest should not have been disciplined because other employees involved in the incident were not disciplined, thus, the Magistrate Judge's findings were not erroneous.


## IV.   BURDEN OF PROOF

The Board states that the Magistrate Judge relied on KRS §13B.090 for the proposition

that the Board has the burden of proof regarding the propriety of Ernest's termination. Section 7 of KRS §13B.090 states, "In all administrative hearings, unless otherwise provided by statute or federal law, the party proposing the agency take action or grant a benefit has the burden to show the propriety of the agency action or entitlement to the benefit sought. The agency has the burden to show the propriety of a penalty imposed or the removal of a benefit previously granted." Thus, the Magistrate Judge was correct in determining that the Board had the burden of proving that its termination of Ernest was proper.

## V.   BOARD'S AUTHORITY TO PROVIDE A POST-TERMINATION HEARING FOR A TERMINATED EMPLOYEE

The Board again raises the argument that it lacked the authority to provide a post-termination hearing for a terminated employee. On December 29, 2004, this Court entered an opinion and order addressing the Board's contention that it is unable to provide a post-termination hearing for a terminated employee. For the reasons set forth in the Court's opinion and order, dated December 29, 2004, the Court will deny the Board's objections that it lacks the authority to provide a post-termination hearing for a terminated employee.

## VI.   CONCLUSION

Having considered defendant's objections, which the Court finds to be without merit, and having made a *de novo* determination, the Court is in agreement with the Magistrate Judge's proposed findings of fact and recommendation. Therefore, defendant's objections will be overruled.

7

Accordingly, the Court, being otherwise fully and sufficiently advised, HEREBY

ORDERS that

    (1)    the Magistrate Judge's proposed findings of fact and recommendation [DE #61] is ADOPTED as and for the opinion of the Court;

    (2)    defendant's objections to the Magistrate Judge's proposed findings of fact and recommendation [DE #65] are OVERRULED;

    (3)    defendant the Bourbon County Board of Education's motion for summary judgment [DE #32] is DENIED;

    (4)    this action shall proceed to trial on damages; and

    (5)    the parties shall file a joint status report within thirty (30) days from the filing of this Opinion & Order regarding the probable length of trial, whether there will be issues to submit to a jury and the dates that are mutually convenient with counsel to assign this case for trial.

This _18th_ day of July, 2005.

KARL S. FORESTER, SENIOR JUDGE

8